UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| VEIDRE SELF | * | CIVIL ACTION |
| | * | NO. |
| | * | |
| VERSUS | * | SECTION |
| | * | |
| | * | |
| RON GENCO and | * | |
| TANGIPAHOA PARISH SCHOOL BOARD | * | |
| | * | |

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

## COMPLAINT FOR DAMAGES: RACE DISCRIMINATION IN EMPLOYMENT: FMLA VIOLATION; ADA VIOLATION

This civil action is for declaratory and injunctive relief and for compensatory damages, including back pay, to enforce the right of Plaintiff to be free from discrimination on the basis of her race as guaranteed by Title 42 of the United States Code, Section 1983 and by Louisiana state law. In addition it is brought under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* and under Louisiana state law. It is also brought by virtue of this Court's continuing oversight of the Tangipahoa Parish School Board in the matter styled *Joyce Marie Moore, et al. v. Tangipahoa Parish School Board*, Civil Action No. 65-15556.

More particularly, this is the complaint of Veidre Self, an African-American person of the full age of majority and a resident and domiciliary of the Parish of Livingston, State of Louisiana, who respectfully avers as follows:

1.  Made defendant is the Tangipahoa Parish School Board, (hereafter, the School

Board) a political subdivision of the State of Louisiana. At all times pertinent hereto, the actions complained of occurred within the Eastern District of Louisiana. Further made defendant is Ronald Genco, a Caucasian person of the full age of majority and a resident and domiciliary of the Parish of Tangipahoa, in his individual capacity. At all times pertinent hereto Genco was employed by the School Board as the School Board's Chief Human Resources Officer.

2. The jurisdiction of this Court is invoked under Title 42 of the United States Code, Section 1983 and pursuant to the provisions of 29 U.S.C. § 1331. Plaintiff's state law claims comes within the Court's pendent jurisdiction. Furthermore, this Court has continuing oversight and jurisdiction of the Tangipahoa Parish School Board under Orders issued in the matter styled *Joyce Marie Moore, et al. v. Tangipahoa Parish School Board*, Civil Action No. 65-15556.

3. Veidre Self (Self), African-American, has worked for the School Board as a full-time Mathematics teacher, with tenure, beginning approximately 2001 until she was constructively terminated, on October 14, 2013, as will appear below. During that period of time, Self worked to the satisfaction of her employer, never receiving negative teaching evaluations or other employer write-ups. As mathematics teacher at Independence High School Self played a big part in preparing students for high-stakes standardized examinations.

4. Self was born with bilateral chronic pars interarticularis defects at the L5 level of her back. The structural instability in her lower back made her particularly susceptible to back problems.

5. In 2011 Self was, through no fault of her own, rear-ended in an automobile incident which exacerbated and made symptomatic her chronic back problem. These back problems continued to grow worse and culminated in lumbar spine surgery on November 18, 2013.

6. From the date of her accident until the present Self has struggled to walk, to sit, to concentrate and to work because of her back.

7. On September 3, 2013 Self requested, and was granted, leave under the self-care provisions of the Family and Medical Leave Act. Self was on such FMLA leave from August 29, 2013 to December 31, 2013. Ronald Genco as head of Human Resources for Tangipahoa Parish School System had full knowledge of Self's back problems and of her taking FMLA leave.

8. On December 31, 2013 Self's FMLA leave was due to run out. Self's treating physicians, Dr. Mathew Shelly and Dr. Eric Overlander, stated that Self was not able to perform her job duties, due to her back. Self thereupon requested Extended Medical Leave pursuant to Tangipahoa Parish School System policy. Self had previously requested Extended Medical Leave due to maternity on or about December 2006, and this had been granted by Thomas Bellavia, Assistant Superintendent, who recommended it to the Tangipahoa Parish School Board. As a matter of long-standing practice, the Tangipahoa Parish School Board routinely approves with little or no independent inquiry, the administrative recommendations for Extended Medical Leave coming from the Superintendent or his principle deputies.

9.      Although Self's physical need for Extended Medical Leave exceeded the requirements set pursuant to Tangipahoa Parish School System policy, Self's application for the leave was repeatedly denied, pending the receipt of additional information from her treating physicians.

10.     On August 27, 2013 Self sought and received a medical evaluation from Dr. Mathew Shelly who stated that Self was unable to work with her back problems. Self also went to see Jessica Harvey, a physician's assistant for Dr. Carl Lowder on August 30, 2013 who stated that after a course of epidural injections, that Self would be able to return to teaching in December. Extended Medical Leave was denied and instead Self was directed to use FMLA and sick days, beginning August 29, 2013.

11.     By September 18, 2013 Self had depleted her sick days. She asked Genco by telephone why she was denied Extended Medical Leave. Genco replied that a major surgery would be sufficient to trigger entitlement to Extended Medical leave. Genco further stated that that he, Genco, makes the decision on Extended Medical Leave, and that the Board would approve whatever he recommended.

12.     On September 27, 2013 Self consulted Dr. Eric Overlander, surgeon, who informed her that she was to undergo L5-S1 posterior and anterior fusion on November 18, 2013. Self sent Dr. Overlander's report to Genco on or about October 1, 2013 via email, and the next day inquired by e-mail whether the information Dr. Overlander was sufficient. On October 3rd, Genco replied by e-mail that the information Self had

4

supplied was sufficient.

13. On or about September 13, 2013, Self unexpectedly learned that the School Board would no longer contribute to her health care insurance premiums, an administrative act which is usually accomplished after termination of regular employment. It was not until a few days later, on September 17, 2013, that Self learned that the Tangipahoa Parish School Board had refused to grant Extended Medical Leave to Self, and that her insurance co-pay had been cancelled prior to the Board's action. Self sent Genco an email on October 11, 2013 complaining that the denial of her Extended Medical Leave was arbitrary because she met the standard for FMLA, and inquiring how the two standards differed. Genco almost immediately, on October 14, 2013, saw to it that Self was "locked-out" of the School Board e-mail system. This action constituted Self's constructive discharge. Genco's stated explanation to Self, which came to her private email on October 16, 2013 was "The extended sick leave was denied as it was not one of the illnesses categorized as catastrophic." At the time this explanation was given, Genco had approved Extended Medical Leave for a Caucasian teacher's routine pregnancy.

14. The stated reason for the denials was that insufficient information had been provided. This stated reason is false and pretextual, because, each time, the reasons given were both medically compelling and properly documented by a licensed physician. At no time did Defendants require Self to submit to an independent medical examination.

15. On Friday, October 11, 2013 Genco again requested that Self provide, at her

expense, more doctor information.

16. The Tangipahoa Parish School Board's and Genco's decision to deny Extended Medical Leave to Self for the pretextual reason that her illness was not categorized as "catastrophic" was not only arbitrary and capricious, but was also motivated by an impermissible desire to terminate Self because 1) Self found it necessary to take FMLA leave when the Board needed a highly qualified math teacher to continue to provide instruction at Independence High School, which was a marginally performing educational institution (D-), at best; 2) Self had a history of disability and/or was considered disabled and/or 3) Self was African-American, and as such was held to a different, and more burdensome standard in obtaining Extended Medical Leave than other similarly situated teachers who applied for Extended Medical Leave who were not African-American.

17. In denying Self her well-deserved Extended Medical Leave while at the same time granting such leave to Caucasian teachers who were actually less needful of the leave, the School Board and Genco participated in conduct which was, at the same time, negligent and which had a discriminatory purpose and effect on the basis of Plaintiff's race, in violation of Title 42 of the United States Code, Section 1983, of the Fourteenth Amendment of the Constitution of the United States, and of Louisiana state law including, without limitation La. R.S. 23:332 et seq. And thereby, the School Board is also in violation of the Court's Orders enjoining such discriminatory personnel practices and instituting curative measures which have been set forth in the matter styled *Joyce Marie Moore, et al. v. Tangipahoa Parish School Board*, Civil Action No. 65-15556.

18. For these actions and/or omissions with respect to violations of the FMLA, the School Board and Genco are jointly liable unto Self for the damages set forth *infra*. For actions and omissions with respect to violations of 42 U.S.C. § 1983, Title VII and corresponding state law, the School Board is liable unto Self for the damages set forth *infra*.

## DAMAGES

19. As a result of the Defendants' actions and/or failure to act, Self has suffered damages in the following, non-exclusive respects:

a. Loss of income and/or earnings potential with benefits;

b. Punitive damages to the extent allowed by law;

c. General damages to include pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, inconvenience and humiliation;

d. Reinstatement or, in the alternative, front pay;

e. Reasonable attorney's fees, costs, and legal interest from the date of judicial demand according to the law of the State of Louisiana;

f. All equitable relief deemed just and proper by this Court, and;

g. All other statutory remedies available.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this, his Complaint, be cited and served on Defendant be required to answer same, that after due proceeding had, judgment be rendered for Plaintiff Veidre Self and against the School Board and/or against Genco

individually, in an amount to be determined as just under the circumstances, for all equitable relief deemed just and proper by this Court, and for legal interest from the date of judicial demand.

> Respectfully submitted,
> LAW OFFICE OF DALE EDWARD WILLIAMS
>
> /s/Dale E. Williams
> Dale E. Williams, Bar #18709
> 212 Park Place
> Covington, Louisiana 70433
> Telephone: (985) 898-6368
> Facsimile:  (985) 892-2640
> mailto:dale@daleslaw.com

## VERIFICATION

Pursuant to the provisions of 28 U.S.C. § 1746, I verify under penalty of perjury that I have read the foregoing Complaint, and it is true and correct to my personal knowledge and belief.

Covington, Louisiana, this 20th day of February in the year 2014.

_____
Veidre Self